**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

FREDERICK C.,

                                    Plaintiff,

v.                                                              1:19-CV-1078
                                                                (CFH)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

**APPEARANCES:**                          **OF COUNSEL:**

Kirk& Teff, LLP                              DREW CHISOLM, ESQ.
10 Westbrook Lane
P.O. Box 4466
Kingston, New York 12402
Attorneys for plaintiff

Social Security Administration          CHRISTOPHER L. POTTER, ESQ.
625 JFK Building
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION & ORDER[1]

Plaintiff Frederick C.[2] brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("Commissioner" or

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. **Error! Main Document Only.**§ 636(c), Federal Rule of Civil Procedure 73, N.D.N.Y. Local Rule 72.2(b),and General Order 18. Dkt. No. 4.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision & Order will identify plaintiff by first name and last initial.

"defendant") denying his application for disability insurance benefits.  Dkt. No. 1.

Plaintiff moves for a finding of disability, and the Commissioner cross moves for a

judgment on the pleadings.  Dkt. Nos. 9, 16.  For the reasons set forth below, plaintiff's

motion is denied and the Commissioner's motion is granted.

## I.     Background[3]

Plaintiff was born on September 1, 1965, and is a high school graduate who

completed one year of college.  T. 48, 125.  Plaintiff lives with his wife and one of his

adult daughters.  Id. at 155.  On December 16, 2016, plaintiff protectively filed an

application for disability insurance benefits, alleging disability beginning on July 27,

2016.  Id. at 134.  His claim was denied initially on March 7, 2017.  Id. at 55-69.  Plaintiff

requested a hearing, and a hearing was held on August 20, 2018, before Administrative

Law Judge ("ALJ") Kieren McCormack.  Id. at 30-54.  On September 24, 2018, the ALJ

rendered an unfavorable decision. Id. at 12-29.  On July 1, 2019, the Appeals Council

denied plaintiff's request for review, making the findings the final determination of the

Commissioner.  Id. at 1-6.  Plaintiff commenced this action on August 29, 2019.  See

Dkt. No. 1.

## II.     Discussion

### A.  Standard of Review

---

[3]  References to the administrative transcript will be cited as "T" **Error! Main Document Only.**and page citations will be to the page numbers in the bottom right-hand corner of the administrative transcript.  All other citations to documents will be to the pagination generated by the Court's electronic filing system, CM/ECF, and will reference the page numbers at the documents' header, and not the pagination of the original documents.

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (internal quotation marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  However, if the correct legal standards were applied and the ALJ's finding is supported by supported by substantial evidence, such finding must be sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."

Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted); Venio v.

Barnhart, 213 F.3d 578, 586 (2d Cir. 2002).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . .

benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous

period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable

impairment is an affliction that is so severe that it renders an individual unable to

continue with his or her previous work or any other employment that may be available to

him or her based upon age, education, and work experience.  Id. § 423(d)(2)(A).  Such

an impairment must be supported by "medically acceptable clinical and laboratory

diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is

"based [upon] objective medical facts, diagnoses or medical opinions inferable from

[the] facts, subjective complaints of pain or disability, and educational background, age,

and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458,

at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.

1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. §

404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers
> whether the claimant has a 'severe impairment' which

> significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. at 1180 (citing Berry, 675 F.2d at 467).

### C.  ALJ Decision

In his September 24, 2018 decision, the ALJ decided as an initial matter that plaintiff met the insured status requirements through December 31, 2020.  T. at 17.  Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since July 27, 2016, the alleged onset date.  Id. The ALJ found at step two of the sequential evaluation that plaintiff had the severe

impairments of major depression disorder, post-traumatic stress disorder ("PTSD"), panic disorder, and social anxiety disorder. Id. at 17-18. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 18-20. Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels" but with certain nonexertional limitations. Id. at 20-24. Specifically, the ALJ found that plaintiff could work only at low stress jobs, defined as "jobs containing no more than simple, routine, and repetitive tasks, involving only simple work related decisions; with few, if any workplace changes; and where there is only occasional interaction with supervisors and coworkers and no interaction with the general public." Id. at 20. At step four, the ALJ determined that plaintiff was not capable of performing his past relevant work. Id. at 24-25. Considering plaintiff's RFC, age, education, and work experience, along with testimony from a vocational expert ("VE"), the ALJ determined that plaintiff could perform the requirements of representative occupations such as collator operator, marker, and router, which exist in significant numbers in the national economy. Id. at 25-26. Therefore, the ALJ determined that plaintiff "has not been under a disability, as defined in the Social Security Act, from July 27, 2016, through the date of this decision[.]" Id. at 26.

## D. Arguments

Plaintiff argues that the ALJ (1) erred at Step Two by finding that plaintiff's physical impairments were not severe; (2) erred at Step Three by finding that plaintiff's anxiety

and depression did not meet or equal a listed impairment; (3) erred in his RFC determination by improperly assessing the opinion evidence from non-examining state consultant Dr. C. Walker and treating Nurse Practitioner Kieren Liggan-Casey; and (4) failed to adequately consider subjective testimony regarding plaintiff's symptoms and the resulting functional limitations.  Dkt. No. 9 at 10-25.

Defendant argues that substantial evidence supports the ALJ's findings at Step Two and Three, as well as the ALJ's RFC determination.  Dkt. No. 16 at 3-20. Defendant further contends that the ALJ did not err in his assessment of the medical opinion evidence or the evidence regarding plaintiff's symptoms.  Id. at 14-15, 21-23.

### E.  Analysis

### 1.  Step Two

At Step Two, the ALJ must determine whether the claimant has a severe impairment that significantly limits his physical or mental abilities to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c)).  Basic work activities include walking; standing; sitting; lifting; carrying; pushing; pulling; reaching; handling; seeing; hearing; speaking; understanding, remembering and carrying out simple instructions; using judgment; and responding appropriately to supervision, co-workers, and usual work situations.  Taylor v. Astrue, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing Gibbs v. Astrue, 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)).  "Although the Second Circuit has held that this step is limited to 'screening out de minimis claims,' [ ] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe."  Taylor, 32 F. Supp. 3d at 265 (quoting Dixon v.

Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995); Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).  Overall, the claimant retains the burden of presenting evidence to establish severity.  Id. (citing Miller v. Comm'r of Soc. Sec., No.  05-CV-1371 (FJS/GJD), 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has indicated that the failure to find a specific impairment severe at Step Two is harmless where 1) the ALJ concludes that there is at least one other severe impairment, (2) the ALJ continues with the sequential evaluation, and (3) the ALJ's analysis demonstrates that he adequately considered the evidence related to the non-severe impairment.  Fuimo v. Colvin, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing Dillingham v. Astrue, No. 09-CV-0236 (GLS/VEB), 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), Report and Recommendation adopted by 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); see also Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (finding that any error in failing to find the plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered the plaintiff's anxiety and panic attacks at those subsequent steps).

Here, the ALJ found that plaintiff had four severe mental impairments: major depression disorder, PTSD, panic disorder, and social anxiety.  T. at 17.  Plaintiff contends that the ALJ erred by failing to find that plaintiff's physical impairments, namely cervical spine disorder, right arm and hand pain, and psoriatic arthritis, also rose to the level of severe impairments.  Dkt. No. 9 at 11.

The ALJ addressed each of these physical impairments in his decision. He noted that imaging reports showed foraminal narrowing of plaintiff's right C4-C5 vertebrae, supporting a December 2017 diagnosis of cervical spondylosis and radiculopathy after plaintiff complained of neck pain that radiated down his right side and affected use of his right hand.  T. at 17, 330-331, 510.  Plaintiff's treating physician recommended conservative treatment with six weeks of physical therapy.  Id. at 510.  At a follow-up appointment in April 2018, plaintiff reported increased range of motion despite continued pain, and a physical examination showed full range of motion in the neck; normal walking gait; and full bilateral range of motion in the shoulders, elbows, wrists, and forearms.  Id. at 506.

The ALJ also reviewed the medical records related to plaintiff's psoriatic arthritis. T. at 18.  Treatment notes depicted a stable condition that was controlled with medication, although plaintiff still occasionally experienced a rash on his hands.  Id. at 18, 332, 334, 336, 338, 340,342.  During his most recent examination, his physician reported no evidence of active disease, based on plaintiff's symptoms and blood work, but continued to monitor plaintiff's condition every three months.  Id. at 338, 342.

The ALJ also recognized that plaintiff had been diagnosed with chronic pain syndrome in November 2017, and was prescribed pain medication.  T. at 18, 350.  Still, the ALJ could not identify any functional limitations arising from this condition, as physical examination results typically showed normal results, even after the chronic pain syndrome diagnosis.  Id. at 18, 215, 228, 231, 336, 506-507.

Plaintiff contends that the ALJ erred by failing to discuss plaintiff's subjective complaints of pain before deciding whether his physical impairments met the *de minimis*

standard for a severe impairment.  Dkt. No. 9 at 13-14.  In particular, plaintiff cited his December 2017 description of his progressively worsening neck and arm pain that reached an 8 out of 10 on the pain scale.  Tr. at 509.  During this same period, plaintiff reported "dropping things from his right hand," and pain that was exacerbated by lifting and reaching.  Id.  Plaintiff also complained the pain interfered with activities of daily living including household chores, physical exercise, sleep, work, and his appetite.  Id.

Although the ALJ did not directly reference plaintiff's subjective description of his physical impairments in his step two analysis, he expressly factored in plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms" as part of his overall decision, and found them inconsistent with the medical evidence.  T. at 24.  At step two, the ALJ focused on the treatment notes that were inconsistent with plaintiff's description of debilitating physical pain.[4]  Id. at 18.  These notes included plaintiff's April 2018 report that the range of motion in his neck improved as a result of physical therapy, and his description of improved psoriatic arthritis pain while on prescription medication.  Id. at 17, 338, 506.

The ALJ also cited findings in the medical record that were inconsistent with plaintiff's description of severe pain.  See Jackeline R.R. v. Comm'r of Soc. Sec., No. 19-CV-804, 2021 WL 22507 (W.D.N.Y. Jan. 4, 2021) ("Although plaintiff repeatedly rated her pain as a nine or ten on a scale of one to ten, the medical record exhibited findings that were inconsistent with such severe complaints of pain.").  This included September 12, 2016 and October 24, 2016 evaluations that found good grip strength in both hands, and normal range of motion in plaintiff's fingers, wrists, elbows, shoulders,

---

[4]  The ALJ summarized plaintiff's testimony and subjective complaints as part of the RFC analysis.  T. 20-21.

hips, knees, ankles and toes.  T. at 228, 231.  On April 4, 2018, plaintiff's rheumatologist described plaintiff's psoriatic arthritis as "clinically stable . . . without evidence of active disease.  Id. at 338.  On April 11, 2018, plaintiff described his pain as 8 of 10, but his physician found full range of motion of the neck on flexion, extension, lateral bending, and lateral rotation.  Id. at 506.  Plaintiff was able to walk without difficulty, and demonstrated full range of motion in the shoulders, elbows, wrists, forearms, knees, and ankles, bilaterally.  Id.  A July 17, 2018, rheumatology examination produced similar findings. Id. at 333-334.  Treatment notes from the relevant period also show that plaintiff described himself as "active" and reported that he was exercising or performing other physical therapy up to three times per week.  Id. at 213, 333, 337, 506.

"The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe."  Bergeron v. Astrue, No. 09-CV-1219 (MAD), 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quoting McConnell v. Astrue, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)).  "The severity of an impairment is not determined merely by diagnosis, but by the limitations imposed by the impairment."  Tillis v. Colvin, No. 1:14-CV-962, 2016 WL 8674672, at *2 (N.D.N.Y. Mar. 11, 2016).  In this case, the ALJ reviewed the record for evidence of functional limitations associated with plaintiff's physical impairments and relied upon a series of "normal" clinical examination results to conclude that plaintiff could physically perform basic work functions.  Although plaintiff identified discrete examples of reduced physical function at points in time, such as reduced grip strength and reach in November and December 2017, the ALJ marshaled substantial evidence over the course of plaintiff's

treatment to conclude that plaintiff's diagnosed cervical spine impairment, arm and neck pain, or psoriatic arthritis imposed no more than minimal vocational limitations for a continuous period of twelve months.  See Gilbert H. v. Saul, No. 5:20-CV-80 (MAD), 2020 WL 6146596, at *7 (N.D.N.Y. October 20, 2020) (ALJ's step two determination was supported by substantial evidence where the "record demonstrates that Plaintiff's assertions of pain were not substantiated by examinations."); see also Bliss v. Colvin, No. 3:13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such.").  Accordingly, a reasonable mind could accept the totality of the record as adequate to support the ALJ's conclusion that plaintiff's physical impairments were not sufficiently severe to significantly limit his ability to engage in basic work activities.  Halloran, 362 F.3d at 31. Therefore, the Court does not find any error in the ALJ's decision to label plaintiff's physical impairments as non-severe.

## 2.  Step Three

At step three of the disability analysis, the ALJ must determine if plaintiff suffers from a listed impairment.  See 20 C.F.R. §§ 404.1520, 416.920.  It is the plaintiff's burden to establish that his medical condition or conditions meet all of the specific medical criteria of the particular listed impairments.  Pratt v. Astrue, No. 7:06-CV-551 (LEK/DRH), 2008 WL 2594430, at *6 (N.D.N.Y. June 27, 2008) (citing Sullivan v. Zebley, 493 U.S. 521, 530 (1990)). If a plaintiff's "impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify."  Id.  In order

to demonstrate medical equivalence, a plaintiff "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Sullivan, 493 U.S. at 531 (emphasis added).

At step three of the sequential evaluation, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically-equaled the severity of a listed impairment. T. at 18-20.  In making this determination, the ALJ considered Listings 12.04 (depressive, bipolar, and related disorders); 12.06 (anxiety and obsessive-compulsive disorders); and 12.15 (trauma and stressor-related disorders). Id.  The ALJ followed the "special technique" established by the agency for determining whether plaintiff suffered from a listed impairment.  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  The special technique includes determining the functional limitations imposed by plaintiff's impairments in each of four broad areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself.  Id. To meet the severity of a listed impairment, plaintiff must have at least two "marked" limitations or one "extreme" limitation in the broad areas of functioning.  See, e.g., 20 C.F.R. Pt. 404, Subpt. P., App.1 § 12.04(B) (1)-(B) (4).  Based on the record, the ALJ found that plaintiff had "moderate" limitations in all of the broad areas cited above.  T. at 19.  Therefore, the ALJ found that plaintiff did not satisfy the "B" criteria of the listings. Id. at 20.  The ALJ also considered the "C" criteria and found that plaintiff did not present with a "serious and persistent" disorder, including but not limited to having reached only "marginal adjustment," defined as a minimal capacity to adapt to changes in his environment or to demands that are not already a part of his daily life.  Id.

13

Plaintiff argues that the ALJ erred at Step Three, particularly with regard to the areas of interacting with others and adapting or managing oneself.  Dkt. No. 9 at 17.  The Court will address each of these two areas in detail below.

### a.  Interacting with Others

The second broad area of functioning in paragraph B is the ability to "interact with others."  The ALJ noted plaintiff's statements that he had difficulty engaging in social activities, getting along with others, and spending time in crowds.  T. at 19, 44, 284.  However, the ALJ also cited record evidence that plaintiff was able to shop, spend time with family, live with others, and go on vacation to Florida.  T. at 19, 157-158, 390.  His therapist encouraged daily attempts at such activities.  T. 157.  As plaintiff progressed in his treatment, he was able to engage in a fifteen-minute conversation during an unexpected encounter with a friend, and worked on several home improvement projects with his son-in-law.  T. 312.  Some more stressful attempts to socialize, such as attending a crowded auction with his wife, still prompted panic attacks.  T. 290.

The ALJ noted that his conclusion at Step Three was consistent with the opinion of state psychological consultant Dr. C. Walker, who applied the paragraph B criteria and found moderate limitations in plaintiff's ability to interact with others.[5]  See Frye ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) (holding that the ALJ properly relied on state agency psychiatric consultant's report because he was the only expert of record who specifically assessed whether the plaintiff's mental impairment met or equaled a listed impairment).  The ALJ also noted that treatment

---

[5]  Dr. Walker's opinion, and the weight that the ALJ assigned, is discussed in more detail below as part of the analysis of the RFC determination.

notes showed that plaintiff was able to develop a "good rapport" with his physicians and other treatment providers, and was cooperative and comfortable during his appointments.  T. 19, 377, 390.

Based on the factors set out above, the ALJ had substantial evidence to conclude that plaintiff had moderate, rather than marked, limitations in the area of social interaction.  Certainly, there is evidence in the record to support plaintiff's argument that he still has difficulty with social interaction, despite the documented progress in his treatment.  However, the ALJ's Step Three determination did not preclude him from addressing these difficulties as part of the RFC determination, and he did so by limiting plaintiff to work that required only occasional interaction with coworkers and supervisors, and no interaction with the general public.  T. at 20.

### b.  Adapting or Managing One's Self

The fourth area of broad functioning in paragraph B involves adapting and managing oneself, which includes the ability to regulate emotions, control behavior, and maintain well-being.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E(4).  Again, the ALJ found plaintiff had a moderate limitation in this area.  T. at 19.  He cited evidence that plaintiff demonstrated appropriate grooming and hygiene habits, was cooperative with treatment providers, and had no anger management issues.  Id. at 19, 155-156, 377.  Accordingly, the ALJ marshaled substantial evidence to support his determination that plaintiff had moderate limitations with regard to adaptation.  The ALJ's determination was more restrictive than that of Dr. Walker, whose listings analysis found only "mild" limitations in this area.  Id. at 58.

Plaintiff argues that the ALJ should have placed greater emphasis on evidence showing his difficulties with stressful situations such as meeting new people and continued depressive moods.  T. 45-46, 496, 506.  However, all of these factors were considered by the ALJ.  Id. at 19.  Again, although the ALJ did not find evidence of a marked or extreme limitation at Step Three, he ultimately incorporated these factors into his RFC determination by limiting plaintiff to low stress work.  Id. at 20.

### c.  Paragraph C

The ALJ also considered paragraph C of the relevant listings.  Paragraph C requires that the plaintiff's mental disorder be (1) "serious and persistent"; (2) lasting at least two years; (3) there must also be medical treatment, mental health therapy, psychosocial supports, or a highly structured setting that is ongoing and diminishes the symptoms and signs of the mental disorder; and (4) there must be "marginal adjustment."  20 C.F.R., Pt. 404, Subpt. P., App'x 1, §§ 12.04(C), 12.06(C),12.15(C). Marginal adjustment is defined as minimal capacity to adapt to changes in the individual's environment or to demands that are already a part of the individual's daily life. Id.

Plaintiff certainly has one or more long-standing mental impairments, dating back to at least 2016. However, the ALJ found that the plaintiff's activities, mental status examination findings, and treatment notes failed to show that plaintiff experienced "marginal adjustment."  T. at 20.  This finding is supported by substantial evidence. In order to experience marginal adjustment, any changes in a plaintiff's environment must have led to a deterioration in functioning and an inability to function outside the home or led to a "significant" change in medication or other treatment.  Figueroa v. Saul, No. 18-

CV-4534 (JLC), 2019 WL 4740619, at *23 (S.D.N.Y. Sept. 27, 2019) (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(G)(2) (c)).  Here, treatment notes document improvement in plaintiff symptoms, as recognized by plaintiff's treatment providers and plaintiff himself. T. at 284, 390, 469.  Slight adjustments were made to the dosage or type of medication over the course of plaintiff's treatment.  Id. at 376, 390, 397.  Thus, the ALJ's listing determination with respect to paragraph C is also supported by substantial evidence.

### 3.  RFC Determination

RFC is defined as "'what an individual can still do despite his or her limitations.... Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'"  Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  Pardee, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work ... must be reflected in the RFC assessment.'"  Hendrickson v. Astrue, 5:11-CV-927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("S.S.R.") 85-15, 1985 WL 56857, at *6).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

"In deciding a disability claim, an ALJ is tasked with 'weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole,' even if that finding does not perfectly correspond with any of the opinions of cited medical sources." Tanya S. v. Saul, 410 F. Supp. 3d 436, 445 (N.D.N.Y. 2019) (quoting Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). However, it is well established that ALJs are not medical professionals; therefore, ALJs are "not qualified to assess a claimant's RFC on the basis of bare medical findings." Id. (internal quotation marks and citation omitted); see Charland v. Comm'r of Soc. Sec., No. 1:13-CV-492 (GTS/WBC), 2016 WL 1117515, at *2 (N.D.N.Y. Mar. 22, 2016) ("[A]n ALJ cannot assess a plaintiff's RFC based on the ALJ's own interpretation of the medical evidence."). "In other words, there must be substantial evidence to support a finding of functional limitation(s) or lack thereof." Tanya, 410 F. Supp. 3d at 445.

"Before assessing the claimant's RFC, the ALJ must consider the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." Knighton v. Astrue, 861 F. Supp. 2d 59, 66 (N.D.N.Y. 2012) (citing S.S.R. 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996)). This requires the ALJ to "make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch." Walters v. Astrue, No. 11-CV-640 (VEB), 2013 WL 598331, at *3 (N.D.N.Y. Feb. 15, 2013); 20 C.F.R. §§ 404.1513(a)(2)(i), 404.1569a(a). "The claimant's RFC can be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy only after the function-by-function analysis has been completed." Knighton, 861 F. Supp. 2d at 66 (citation omitted); see Walters, 2013 WL 598331, at *3 ("Once the function-by-function

analysis is completed, the RFC may be expressed in terms of exertional levels of work, e.g., sedentary, light, medium, heavy, and very heavy.").

As stated above, the ALJ determined that plaintiff had the RFC to perform work at all exertional levels, but was limited to low-stress jobs that required only occasional interaction with supervisors and coworkers and no interaction with the general public. T. at 20.  "[A]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."  Matta, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); see also Tennant v. Comm'r of Soc. Sec., No. 6:16-CV-360 (DJS), 2017 WL 1968674, at *8 (N.D.N.Y. May 10, 2017); Allen o/b/o Allen v. Comm'r of Soc. Sec., No. 5:16-CV-1207 (WBC), 2017 WL 6001830, *6 (N.D.N.Y. Dec. 4, 2017).  Here, the ALJ based his RFC determination on plaintiff's treatment history, the opinion of consultative psychologist Dr. Walker, the series of mental status examinations in the record, and plaintiff's daily living activities. T. at 24. As set out below, these factors constituted substantial evidence to support the RFC determination.

### a.  Opinion Evidence

#### i.  Psychiatric Mental Health Nurse Practitioner ("PMHNP") Kieren Liggan-Casey

PMHNP Liggan-Casey began treating plaintiff in February 2018.  T. at 481.  On April 19, 2018, PMHNP Liggan-Casey completed a Mental RFC Assessment reflecting plaintiff's current diagnoses of Major Depressive Disorder, PTSD, Panic Disorder, and Social Anxiety DIsorder. T. at 368-371. On the form, Liggan-Casey indicated that plaintiff continued to see him for medication management but was no longer receiving

therapy.  Id. at 369.  Utilizing a check-box form, Liggan-Casey offered his opinion regarding plaintiff's mental health in the categories of "understanding and memory," "sustained concentration and persistence," "social interaction," and "adaptation."  Id. at 369-370.

With regard to understanding and memory, Liggan-Casey opined that plaintiff had "marked" limitations in his ability to remember locations and work-like procedures, and "extreme" limitations in his ability to understand and remember both "short and simple" and "detailed" instructions.  T. at 369.  In the category of sustained concentration and persistence, he opined that plaintiff had "marked" limitations in several areas, his abilities to: carry out very short and simple instructions; "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;" work in coordination with or proximity to others without being distracted; and make simple work-related decisions.  Id.  He further opined that plaintiff had "extreme" limitations in several areas: carrying out detailed instructions; his ability to maintain attention and concentration for extended periods; sustaining an ordinary routine without special supervision; completing a normal work day and work week without interruption; and performing at a consistent pace without an unreasonable number and length of rest periods.  Id. at 369-370.

Addressing the social interaction category, PMHNP Liggan-Casey opined that plaintiff had no limitations with regard to maintain socially-appropriate behaviors and adhering to basic standards of neatness and cleanliness, and marked limitations in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  T. at 370.  He found extreme limitations in plaintiff's ability to

interact appropriately with the general public; to ask simple questions or request assistance; and to accept instructions and respond appropriately to supervisor criticism.

With respect to the adaptation category, PMHNP Liggan-Casey opined that plaintiff had "moderate" limitations in his "ability to be aware of normal hazards and take appropriate precautions, and "marked" limitations in his ability to respond appropriately to changes in the work setting.  T. at 370-371.  He found "extreme" limitations in plaintiff's ability to: travel to unfamiliar places or use public transportation, set realistic goals or make plans independently of others, and tolerate normal levels of stress.  Id. at 371.

PMHNP Liggan-Casey estimated that plaintiff's mental impairments would substantially interfere with his ability to work on a regular and sustained basis at least twenty percent of the time and would cause him to miss work "most" days.  Id.  In a brief narrative, Liggan-Casey explained that he did not believe that plaintiff could work on a regular and sustained basis due to his severe anxiety and depression, and noted that the "act of going to [the] store to buy 1 item" was "overwhelming" for plaintiff.  Id.

The ALJ provided several reasons for assigning "little weight" to PMHNP Liggan-Casey's opinion.  T. at 24.  First, the ALJ noted that Liggan-Casey had only treated plaintiff for two months prior to his opinion, and had seen him on three occasions during that period.  Id. at 24, 481.  Although plaintiff had continually received mental health treatment from the same practice since August 2016, the ALJ assessed that Liggan-Casey's own brief treatment relationship with plaintiff did not suggest a "longitudinal understanding of [plaintiff's] history or symptoms at the time he rendered this opinion."  Id.  The ALJ cited Liggan-Casey's treatment notes that depicted plaintiff's subjective

reporting of his anxiety and depression symptoms, but also clinical evaluation results that consistently showed normal appearance, speech, attitude, thought process, perception, cognition, insight, and judgment.  T. at 24, 480-481, 488, 497.

The Court concludes that the ALJ's assessment of PMHNP Liggan-Casey's opinion is supported by substantial evidence.  First, as a nurse practitioner, Liggan-Casey, although a treating medical source, is not an acceptable medical source.  See 20 CFR § 404.1513(a), (d)(1); SSR 06-03p, 2006 WL 2329939, at *2-3 (S.S.A. 2006)[6]; Barnaby v. Comm'r of Soc. Sec., 8:17-CV-0399 (GTS/WBC), 2018 WL 4522057, at *7 (N.D.N.Y. June 6, 2018) (quoting Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order)) ("[A]n ALJ is 'free to consider' statements of other sources, such as nurse practitioners, in making her overall assessment; however, 'those opinions do not demand the same deference as those of a treating physician'").  However, the ALJ did not reject the opinion on this ground; rather, because he concluded that Liggan-Casey's opinion was not supported by objective medical evidence and was inconsistent with plaintiff's most recent treatment records.  T. at 23-24.

Records the ALJ relied on show that plaintiff exhibited increased anxiety during his first session with PMHNP Liggan-Casey, but that this appointment coincided with a week-long period when plaintiff was without his anxiety medication.  T. at 480-81. Plaintiff reported improved symptoms after his medication was adjusted.  Id. at 488. The ALJ also cited record evidence that plaintiff performed household chores, prepared meals, completed puzzles to improve his concentration, and traveled to Florida with his wife, all suggesting that plaintiff was not as limited as described in Liggan-Casey's

---

[6] This regulation remains in effect for all claims filed before March 27, 2017, including plaintiff's claim.

opinion.  Id. at 27, 55-64.  Accordingly, although plaintiff argues that PMHNP Liggan-Casey's opinion should have been given greater weight, the ALJ's assignment of little weight was supported by substantial evidence.  Vincent v. Shalala, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

### ii. Dr. Walker

State Agency psychological consultant Dr. C. Walker reviewed plaintiff's then-current medical records and issued an opinion dated February 14, 2017.  T. at 23, 58-63.  Dr. Walker rated plaintiff across four categories: understanding and memory; concentration and persistence; social interaction; and adaptation.  Id. at 58.  In Dr. Walker's opinion, plaintiff had no understanding and memory limitations, and would be able to understand and remember simple and complex instructions and procedures.  Id. at 60, 62.  With regard to concentration and persistence, Dr. Walker opined that plaintiff was able to perform certain work activities without significant limitations: carrying out both short simple instructions and detailed instructions, sustaining an ordinary routine without special supervision, making simple work-related decisions, asking simple questions or request assistance, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes.  Id. at 61. Overall, Dr. Walker opined that plaintiff "has some difficulty in this area . . . but will be able to sustain adequate concentration to complete ordinary tasks independently on a sustained basis."  Id. at 62.

With regard to social interaction, Dr. Walker opined that plaintiff was able to ask simple questions or request assistance and had no significant limitations in his ability to

get along with coworkers or peers or in maintaining socially-appropriate behavior and basic standards of cleanliness or neatness.  T at 61.  He also opined that plaintiff was "moderately limited" in his ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors.  Id.  Based on plaintiff's medical records, Dr. Walker concluded that plaintiff may have difficulties relating with others and adapting to changes, and his ability to deal with co-workers and the public would be slightly reduced.  Id. at 62.  In Dr. Walker's opinion, plaintiff was still able to handle brief and superficial contact with others in the workplace and ordinary levels of supervision in the work setting.  Id.

With regard to adaptation, Dr. Walker opined that plaintiff was not significantly limited in his ability to set realistic goals or make plans independently of others, or in his ability to be aware of normal hazards and take appropriate precautions.  T. at 61.  Dr. Walker found moderate limitations in plaintiff's ability to respond appropriately to changes in the workplace, to travel to unfamiliar places, and to use public transportation.  Id.  Overall, Dr. Walker found that plaintiff exhibits some difficulty in this category but will be able to cope with basic changes and make routine decisions.  Id. at 62.

The ALJ assigned "significant weight" to Dr. Walker's opinion, "due to his specialty and understanding of disability programs, and his assessment is consistent with the psychiatric treating records dated before and after his February 2017 review."  T. at 23.  Plaintiff contends that the ALJ erred by (1) relying on a non-examining physician's opinion, and (2) assigning the greatest weight to a 2017 opinion that was

rendered stale by subsequent treatment records.  Dkt. No. 9 at 25.  Neither argument is persuasive.

In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability.  See Frye, 485 F. App'x at 487 ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Christy v. Comm'r of Soc. Sec., No. 5:13-CV-1552 (GTS/WBC), 2015 WL 6160165, at *10 (N.D.N.Y. Oct. 20, 2015) ("[A]n ALJ may rely on the opinions of non-examining medical experts."); Miller v. Comm'r of Soc. Sec., 13-CV-1388 (GLS), 2015 WL 1383816, at *8 (N.D.N.Y. Mar. 25, 2015) (both consultative examiner and non-examining physician were recognized experts in evaluation of medical issues in disability claims; [a]ccordingly, their opinions can be given weight, even greater weight than opinions of treating physicians, when, as here, they are supported by substantial evidence).  Such reliance is appropriate where the consultant's opinion is supported by other record evidence.  See Swan v. Astrue, No. 09-CV-486-S, 2010 WL 3211049, at *5 (W.D.N.Y. Aug. 11, 2010) ("State agency medical consultants are qualified experts in the evaluation of disability claims and as such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Plaintiff contends that the ALJ improperly relied upon Dr. Walker's opinion even though he had never examined plaintiff.  Dkt. No. 9 at 25.  To be sure, "[t]he Second Circuit has recognized that '[t]he opinions of non-examining medical personnel cannot, in themselves and in most situations, constitute substantial evidence to override the

opinion of a treating source.'" Worthy v. Berryhill, No. 3:15-CV-1762 (SRU), 2017 WL 1138128, at *6 (D. Conn. Mar. 27, 2017) (quoting Schisler v. Sullivan, 3 F.3d 563, 570 (2d Cir. 1993)).  However, an ALJ may assign more weight to the opinions of non-examining sources where there is record evidence to support such a determination. See Mia Lu M. v. Comm'r of Soc. Sec. Admin., No. 1:19-CV-843(ATB), 2020 WL 3869627, at *8 (N.D.N.Y. July 9, 2020).  "Notwithstanding the general rule, the opinion of a non-examining source may be credited over that of an examining physician under the proper circumstances." See Camille v. Colvin, 652 F. App'x 25, 28 (2d Cir. 2016) (the regulations permit the opinions of non-examining sources to override the opinions of treating sources provided they are supported by the evidence in the record) (internal citation omitted); Dronckowski v. Comm'r of Soc. Sec., No. 1:18-CV-27, 2019 WL 1428038, at *5 (W.D.N.Y. Mar. 29, 2019) (citing Allen v. Comm'r of Soc. Sec., 351 F. Supp. 3d 327, 336-37 (W.D.N.Y. 2018)).

Here, the ALJ devoted extensive discussion to establishing consistency between Dr. Walker's opinion and plaintiff's treatment history for depression, anxiety, and related mental health symptoms.  T. 21.  In doing so, the ALJ relied on much of the same medical evidence that influenced his decision to discount PMHNP Liggan-Casey's opinion.  Id.  Plaintiff had not required hospitalization for his mental health impairments, and the record documented generally successful management of plaintiff's psychological symptoms with therapy and medication that allowed him to pursue his daily activities, including traveling with his wife out of state.  Id. at 24, 390, 444, 469, 480.  In addition, mental status examinations conducted by plaintiff's treatment providers during this period were all generally normal.  Id. at 377, 431, 437, 462, 504.

Based on this history, the ALJ concluded that plaintiff's symptoms "wax and wane, but have improved with treatment." Id. This conclusion is supported by substantial evidence in the record. Plaintiff first sought treatment in July 2016 due to increasingly stressful changes at work that caused him to feel depressed, irritable, and not want to leave his home. Id. at 209-210. Subsequent treatment notes reflect improvement in those symptoms, and plaintiff frequently expressed an appreciation for his own recognizable measures of progress, including getting out of the house on a daily basis, improved sleep, and extended travel with his wife. Id. at 284, 390, 469.

The ALJ noted that in September 14, 2016, plaintiff reported having fewer panic attacks after he was prescribed medication. T. at 21, 207. During his examination on that date, plaintiff was alert, oriented, well-spoken, and displayed "reasonable" concentration and "good" immediate and short-term memory. Id. at 21, 206. In October 2016, plaintiff told his therapist that he was feeling better, engaging with others more, and felt that his memory was improving, but he still struggled with large crowds and public places. Id. at 21, 284.

As plaintiff's psychiatric medication was adjusted in October and November 2017, he reported improved social functioning with reduced anxiety and panic. T. 21-22, 284, 319. By June 2017, plaintiff was able to travel from New York to Florida with his wife for a two-week vacation that he described as "restful" and "beneficial." Id. at 22, 390. During this period, he withdrew from individual therapy sessions but still met with a counselor to manage his medication. Id. at 369, 504. In April 2018, plaintiff declined a suggestion to return to therapy after he reported feeling overwhelmed, explaining that he had too many other appointments to keep track of at the time. Id.

Despite these documented improvements, plaintiff continued to struggle with large crowds and public places, and the record offers several instances where his symptoms were aggravated by stressful interactions with his former employer or members of the public.  Id. at 305, 326, 480.  The ALJ accounted for these factors in his RFC determination by limiting plaintiff to "low stress" work that involved routine tasks and minimal changes, and occasional interaction with supervisors and coworkers and no contact with the general public.  Id. at 20.  Through his recitation of these treatment details, the ALJ provided substantial evidence to support the significant weight assigned to Dr. Walker's non-examining consulting opinion.

The Court is unpersuaded by plaintiff's secondary argument that Dr. Walker's opinion is stale as it was issued in February 2017.  An ALJ is not required to receive an updated consultative examiner report whenever new evidence is available, unless the additional evidence may change the state medical experts' opinions.  See Stottlar v. Colvin, 15-CV-0340 (GTS), 2017 WL 972108, at *7 (N.D.N.Y. Mar. 10, 2017) (noting that "a medical consultant's failure to consider the complete medical record does not necessarily compel rejection of the medical consultant's opinions 'or the ALJ's finding relying thereon' ").  By itself, "[a] gap of time between when an opinion is rendered and the disability hearing and decision does not automatically invalidate that opinion." Majdandzic v. Comm'r of Soc. Sec., No. 17-CV-1172, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018).  Only a "meaningful change" in Plaintiff's condition during the gap will do so.  Lamar v. Comm'r of Soc. Sec., No. 18-CV-829, 2020 WL 548376, at *3 (W.D.N.Y. Feb. 4, 2020) (emphasis supplied).  A consultative opinion such as Dr. Walker's may become stale "if the claimant's condition deteriorates after the opinion is

rendered and before the ALJ issues his decision." Maxwell H. v. Comm'r of Soc. Sec.,

1:19-CV-0148 (LEK/CFH); 2020 WL 1187610, at *5 (N.D.N.Y. Mar. 12, 2020) (quoting

Clute ex rel. McGuire v. Comm'r of Soc. Sec., No. 18-CV-30, 2018 WL 6715361, at *5

(W.D.N.Y. Dec. 21, 2018).  As described above, the ALJ found Dr. Walker's opinion to

be consistent with subsequent treatment records from June 2017 and April 2018,

among others.  Therefore, he was not required to obtain an updated opinion, and could

rely on Dr. Walker's opinion to the extent that it was consistent with the record evidence.

### b.      Hearing Testimony and Subjective Reports

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must

take the plaintiff's reports of pain and other symptoms into account.  See Genier, 606

F.3d at 49.  The ALJ must "'carefully consider' all the evidence presented by claimants

regarding their symptoms, which fall into seven relevant factors including 'daily activities'

and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'"

Del Carmen Fernandez v. Berryhill, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y.

Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p,

Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01 at

14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016, the Commissioner eliminated the use of term "credibility" from the "sub-

regulatory policy" because the regulations themselves do not use that term.  SSR 16-

3p, 81 FR at 14167.  Instead, symptom evaluation tracks the language of the

regulations.  The evaluation of symptoms involves a two-step process.  First, the ALJ

must determine, based upon the objective medical evidence, whether the medical

impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" Barry v. Colvin, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a); Genier, 606 F.3d at 49) (alterations in original).

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence.  Cichocki v. Astrue, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superceded SSR 96-7p).  The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination.  Cichocki, 534 F. App'x at 76.  However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. Id.; see also Del Carmen Fernandez, 2019 WL 667743 at *11 (citing Rousey v. Comm'r of Soc. Sec., 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)).

"[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" Cichocki, 534 F. App'x at 76 (quoting Mongeur, 722 F.2d at 1040).

 As part of the RFC analysis, the ALJ reviewed plaintiff's function report, testimony, and statements made to his health care professionals regarding his symptoms and activities.  T. at 21, 154-163, 305, 312.  The ALJ summarized plaintiff's treatment history and documented gradual improvement in plaintiff's mental health.  Id. at 21.  Relying on plaintiff's treatment notes dating back to his initial consultation in July 2016 through his most recent appointment in April 2018, the ALJ found that plaintiff's "symptom's wax and wane, but have improved with treatment."  Id.  In determining plaintiff's RFC, the ALJ also considered plaintiff's daily activities, including taking care of his dog, performing household chores, doing physical therapy at home, reading, completing puzzles to aid his concentration, and traveling with his wife.  T. at 24, 155-156, 390, 444.  Plaintiff correctly points out that the ALJ overstated or miscited some of these activities.  For example, the ALJ stated that plaintiff was able to "walk his dog in public," but the record suggests that plaintiff only walked around his own yard with the dog, reducing the likelihood for social interaction.  Id. at 19, 305.  The ALJ also erroneously cited to plaintiff's "testimony" regarding his daily activities, although there was no such testimony at the hearing.  This evidence was instead found in plaintiff's function report and treatment notes.

 Such errors are harmless in this case.  Purely clerical errors or proofreading mistakes are harmless where there is no prejudicial effect on the plaintiff.  Mortise v. Astrue, 713 F. Supp. 2d 111, 128 (N.D.N.Y. 2010) (concluding that a reference to

incorrect exhibit was harmless error).  Here, the ALJ imposed significant limitations on social limitation in his RFC determination, despite his overstatement of plaintiff's dog-walking activities.  Likewise, the ALJ correctly cited other portions of the record that included an accurate description of plaintiff's daily activities including travel, shopping, and household chores.

Plaintiff also contends that the ALJ erred by failing to discuss hearing testimony from plaintiff's daughter, who described her impression of plaintiff's symptoms and the resulting impact on his functioning.  T. at 44-47.  Under SSR 85-16, the Commissioner is required to consider evidence from third parties; however the ALJ is not required to give weight to such evidence.  SSR 85-16 at *4 ("To arrive at an overall assessment of the effects of mental impairment, relevant, reliable information, obtained from third party sources such as ... family members ... may be valuable in assessing an individual's level of activities of daily living."); see also Sisson v. Colvin, No. 3:14-CV-966 (LEK/TWD), 2015 WL 4878108, at *10 (N.D.N.Y. Aug. 12, 2015) (finding no error where ALJ did not assign weight to husband''s testimony).  Similarly, the ALJ is not required to mention or discuss every single piece of evidence in the record. See Mongeur, 722 F.2d at 1040; Barringer., 358 F. Supp.2d at 79.  Where "the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."  Mongeur, 722 F.2d at 1040.  Following this same approach, there is no requirement that an ALJ discuss third party testimony in his or her written decision. Panella v. Colvin, No. 3:13-CV-869, 2016 WL 1275644, at *5, n.2  (N.D.N.Y. March 31, 2016) (". . . to the extent that Plaintiff argues that the ALJ erred by not discussing in his

written decision the testimony of Plaintiff's family members and others concerning his physical limitations, the Court finds this argument to be without merit.").  Certain exceptions to this general rule may exist, such as a parent testifying on behalf of a minor child.  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988).

Here, the plaintiff's daughter testified that his panic attacks were often triggered by crowds or unexpected social interactions, and that he managed best in a "predictive situation."  T. at 44-47.  She also testified that plaintiff did not drive on his own due to concerns about side effects from his medication.  Id. at 45.  The ALJ considered each of these issues as part of his decision, and incorporated many of her points into the RFC determination.  Id. at 19-21.  He limited plaintiff to low-stress work that required no more than "simple, routine, and repetitive tasks" and "few, if any workplace changes" to accommodate the expressed need for predictive situations.  Id. at 20.  The ALJ also limited plaintiff to jobs that required "only occasional interaction with supervisors and coworkers and no interaction with the general public" to accommodate the social limitations described by plaintiff's daughter and supported by the record evidence.  The ALJ also referenced plaintiff's reduced ability to drive.  Id. at 21. Therefore, the ALJ adequately considered the substance of the third-party testimony, even though he did not directly reference plaintiff's daughter's concerns in his decision.

It is the province of the ALJ to resolve genuine conflicts in the record.  See Veino, 312 F.3d at 588.  However, the Commissioner need not "reconcile explicitly every shred of medical testimony."  Galiotti v. Astrue, 266 F. App'x 66, 67 (2d Cir. 2008) (summary order) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983)).  Here, the

ALJ resolved conflicts between the objective medical record, medical opinion evidence, and hearing testimony by assigning the greatest weight to that evidence that he deemed most consistent with plaintiff's overall treatment record and activities.  In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record.  See Matta, 508 F. App'x. at 56 (although ALJ's conclusion did not perfectly correspond with the opinions of medical sources, the ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole).  In light of the ALJ's analysis of plaintiff's medical history, the relevant medical opinions, and plaintiff's activities of daily living, the Court concludes that his RFC determination was supported by substantial evidence, as summarized above.

### 4.  Step Five

Plaintiff has not raised any specific challenge to the ALJ's Step Five determination, so this Court will only briefly address this issue.  At Step Five, the burden shifts to the Commissioner "to show there is other work that [the claimant] can perform." McIntyre, 758 F.3d at 150 (quoting Brault., 683 F.3d at 445).  "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert."  Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (quoting Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986)).

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question incorporating Plaintiff's limitations.  See Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981).  The ALJ may rely on a VE's testimony regarding the

availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect Plaintiff's limitations.  Calabrese v. Astrue, 358 F. App'x 274, 276 (2d Cir. 2009).  Where the hypothetical is based on an ALJ's RFC analysis which is supported by substantial facts, the hypothetical is proper. Id. at 276-77.

VE Robert Baker testified at the hearing in response to a hypothetical question based upon plaintiff's RFC.  T. at 48-51.  Because this Court has found the ALJ's RFC determination was supported by substantial evidence, it also finds the ALJ's hypothetical to VE Baker was proper, and his Step Five determination was supported by substantial evidence.  Based on the foregoing, the ALJ's decision was based upon correct legal standards, and substantial evidence supports his determination Plaintiff was not under a disability within the meaning of the SSA.  20 C.F.R. § 404.1520(g).

### III.    Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that plaintiff's motion (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion (Dkt. No. 16) is **GRANTED**;

**IT IS SO ORDERED**.

Dated: February 9, 2021
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge